IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 3:24-cr-148 |
| | ) | |
| v. | ) | Making False Statements |
| | ) | 18 U.S.C. § 1001(a)(3) |
| BALTEJ SINGH BRAR, | ) | (Count One) |
| | ) | |
| Defendant. | ) | |
| | ) | Forfeiture Allegation |

## CRIMINAL INFORMATION

The United States Attorney charges that:

### COUNT ONE
(Making False Statements)

At all times relevant to the Criminal Information:

*Small Business Administration*

1. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses.

2. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans suffering from the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP"). These PPP loans were backed by the SBA, and the administration of the PPP was accordingly a matter within the jurisdiction of the executive branch of the United States Government.

1

3. To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. In order to obtain a PPP loan, the applicant was required to acknowledge the program rules, make certain certifications to the SBA, and provide certain supporting documentation as part of the loan application.

4. A PPP loan application had to be processed by a participating financial lender or payment processor. If the PPP loan application was approved, the lender or payment processor funded the PPP loan using its own monies, and such loans were guaranteed by the SBA.

5. Sole proprietors were, in some cases, eligible to receive PPP loans based on their 2019 tax year incomes, with higher 2019 tax year gross incomes resulting in higher PPP loan amounts. The maximum allowable loan amount for a sole proprietor was $20,833. The amount of a PPP loan applicant's income, accordingly, was material to the SBA's administration of the PPP loan program.

### *Defendant*

6. From at least March 26, 2012, and continuing through the date of the Criminal Information, BALTEJ SINGH BRAR ("BRAR"), a South Richmond Hill, New York resident, owned and operated ASPIRE TAX & ACCOUNTING SERVICES INC. ("ASPIRE TAX"). Organized under the laws of New York, ASPIRE TAX was a tax preparation, accounting, and consulting firm. At all times relevant to the Criminal Information, BRAR was an Internal Revenue Service ("IRS") registered tax preparer.

### *BRAR's Fraudulent PPP Submittals*

7. In 2020 and 2021, BRAR began filing PPP loan applications on behalf of other individuals. BRAR advertised, including on the TikTok social media platform, that he would file PPP loan applications on behalf of clients for compensation: A flat up-front fee paired with 10%

of the loan value after the loan was approved. To effectuate the PPP filing, BRAR told prospective PPP applicants to provide him with their Social Security number, a copy of their driver's license, email address, prior bank statements, 2019 year tax return, and a void check – all to be used as supporting documentation on the PPP application.

8. Thereafter, BRAR submitted PPP loan applications on behalf of each applicant. For each application, BRAR marked in the affirmative to the following certification:

> "[T]he information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making false statements to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001."

9. The vast majority of BRAR's clients were sole proprietors (including taxi drivers, truck drivers, and construction workers). In all, BRAR filed at least 349 PPP loan applications, resulting in an aggregate total of $6,992,960 in requested PPP loans. Of these loan applications, the Small Business Administration funded 163 loans, resulting in an aggregate of $3,251,067 in disbursed funds from the federal government. The remaining loans were declined or cancelled, with 180 applications being declined due to questionable activity.

10. Where BRAR's clients' prior year incomes fell below the threshold necessary to receive the maximum PPP loan amount of $20,833, BRAR knowingly and deliberately falsely inflated the applicants' prior year incomes in the PPP applications to reach a monetary threshold that would trigger this $20,833 maximum loan amount.

11. To effectuate the scheme, BRAR generated false and fabricated Internal Revenue Service (IRS) Form 1040 Schedule C documents on behalf of the applicants and submitted these forged forms as supporting documentation to the PPP applications. Such false and fabricated IRS

Form Schedule Cs were never submitted by the PPP applicant to the IRS as part of tax filings; rather, they were only used by BRAR as false supporting documentation on PPP loan applications.

12. Each of BRAR's submittals of a PPP application caused an electronic wiring from the PPP loan processor servers in New York to the Small Business Administration's servers in the Eastern District of Virginia.

13. Many of the applicants for whom BRAR filed PPP applications were entitled to receive PPP loans, though not in the falsely inflated amounts reflected on the PPP loan applications that BRAR prepared. Other applicants for whom BRAR filed PPP applications were not entitled to receive PPP loans at all based on the available supporting documentation. Across the hundreds of PPP loan applications that BRAR falsified, BRAR caused $812,766 in actual losses to the Small Business Administration.

*False Statement*

14. On or about March 22, 2021, C.A. sought BRAR's assistance with filing a PPP loan application. BRAR instructed C.A. via WhatsApp message to come to BRAR's office with supporting documentation, including C.A.'s 2019 tax return. In the same conversation, C.A. represented to BRAR that his income was $75,000. In the same conversation, BRAR stated that he would charge "200 upfront and 10% after [the PPP loan is] approved."

15. On or about March 22, 2021, C.A. paid BRAR $200, the agreed upon up-front payment price, via the Zelle payment application. C.A. thereafter met with BRAR and provided the requested supporting documentation, including C.A.'s legitimate 2019 IRS Form 1040 Schedule C. This legitimate Schedule C reflected $16,075 in gross income generated from C.A.'s job as a taxi operator.

4

16. On or about April 22, 2021, BRAR submitted a PPP loan application in the name of C.A. BRAR marked in the affirmative to the following certification on the PPP loan application:

> "[T]he information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making false statements to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001."

17. As part of this PPP submittal, BRAR prepared a falsified 2019 IRS Form 1040 Schedule C, purporting to show C.A. received $115,298 in gross income as a taxi operator—a figure that would entitle C.A. to receive the largest PPP loan amount possible and far in excess of the PPP loan amount that C.A.'s actual gross income would be entitled to. BRAR then submitted this falsified IRS Form 1040 Schedule C as part of C.A.'s PPP application.

### *Statutory Allegations*

18. On or about April 22, 2021, in the Eastern District of Virginia and elsewhere, BALTEJ SINGH BRAR, the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation and made and used a false writing and document knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, to wit, BRAR made false statements to the Small Business Administration on a Paycheck Protection Program loan application in the name of C.A. by inflating C.A.'s 2019 tax year gross income and by submitting a fictitious 2019 Internal Revenue Service Form 1040 Schedule C as supporting documentation for C.A.'s PPP loan application, all for the purpose of obtaining $20,833 in Government-guaranteed loans through the PPP.

(All in violation of 18 U.S.C. Section 1001(a)(3))

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendant is notified that, if convicted of the offenses alleged in Count One of this Criminal Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes, or is derived from, proceeds traceable to the violation.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c).)

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Avi Panth
Virginia Bar No. 92450
Assistant United States Attorneys
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316
Email: Avishek.Panth@usdoj.gov